FILED

2023 Sep-29  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEXANDRIA BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Case 2:22-cv-01306-AMM |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Comes Now Plaintiff Alexandria Bennett, pursuant to Rule 56 of the Alabama

Rules of Civil Procedure, and files this response in opposition to Defendant

Walmart's Motion for Summary Judgment.

**Narrative of Undisputed Facts**

Alexandria Bennett went into the Helena Walmart Neighborhood Store to buy

groceries for dinner. (Ex. A, Alexandria Bennet depo. p. 76). As Ms. Bennett went

down an aisle, she slipped and fell hard. (Ex. A, Bennett depo. p. 89). There were no

signs in the area of the fall warning of a wet floor or other dangers. (Ex. A, Bennett

depo. P. 121). Ms. Bennett's friend Kevin Allen went to look for Walmart employees

to assist Ms. Bennett and another Walmart customer who saw the fall tried to aid

Ms. Bennett after the fall. (Ex. A, Bennett depo. p. 109).  No one on Walmart's staff

came to address Ms. Bennett's fall for approximately 40 minutes. (Ex. A, Bennett depo. p. 110). Ms. Bennett did not see the water on the floor near the chipped pallets holding the cases of bottled water before she fell. (Ex. A, Bennett depo. p. 92). The water was dirty and difficult to differentiate from the numerous skid marks on the floor. (Ex. A, Bennett depo. pp. 91-92). There is no surveillance camera covering the water aisle where Ms. Bennett fell, and although the Helena store Manager Elizabeth Parker asked her asset protection manager if the store could get more cameras, Ms. Parker was told inexplicably that the store could not get more cameras. (Ex. D, Elizabeth Parker depo. pp. 31-32).

Ms. Bennett was transported from Walmart by ambulance to the hospital with complaints of pain in her hip and ankle. (Ex. A, Bennett depo. p. 113). She required ankle surgery in July 2021 as a result of the subject fall. (Ex. A, Bennett depo. p. 137). The surgery did not resolve her pain and Ms. Bennett was still having ankle problems on the date of her 2023 deposition. (Ex. A, Bennett depo. p. 143). She will never be 100% healed. (Ex. A, Bennett depo. p. 140). Ms. Bennett also experienced anxiety and sleeplessness caused by her pain and inability to perform everyday tasks. (Ex. A, Bennett depo. p. 179).

In order to prevent hazards like slip and falls in a Walmart store, Walmart's policies, procedures, and training manuals mandate that stores "periodically perform a sweep of [each] department or area so that you can correct hazards as soon as

possible." (Ex. B, Walmart's policies and procedures produced in discovery, p. 31). When a slip and fall occurs in a Walmart store, Walmart's policies, procedures and training manuals mandate that store management "Determines how and why the accident occurred. Identify the root cause, and determine the steps to take in order to prevent the same or similar accidents from happening.... accident reviews are fact-finding missions." (Ex. B, Walmart's policies and procedures produced in discovery, p. 70). In semi compliance therewith, Roman Cooper, the Support Manager on duty at the time of the subject slip and fall, reported that Ms. Bennett "slipped and fell on floor" (Ex. C, part of "Customer Statement" produced by Walmart, p. 1). As to the root cause of the accident, no one from Walmart ever made any effort to find out why there were puddles of water on the floor in the water aisle (Ex. D, Parker depo. p. 57).

If Walmart's written policies and procedures had been followed, Ms. Bennett's slip and fall would have been prevented.

Within 6 months of Ms. Bennett's incident, there were 3 reported slip and falls at the Helena Neighborhood Walmart. (Ex. E, part of Walmart's Responses to Plaintiff's Interrogatories, p. 6).  In April of 2020, a customer fell in a puddle of water in the checkout lane, and just a few weeks before Ms. Bennett's incident, in September 2020, a customer reported falling on a pink substance in the dairy aisle. (Ex. E, part of Walmart's Responses to Plaintiff's Interrogatories, p. 6).

According to Walmart's written policies and procedures, the Helena store (like all others) should have a "Safety Team". (Ex. B, Walmart's policies and procedures produced in discovery, p. 34). This is allegedly because "'Walmart takes injuries very seriously, as any slip, trip or fall could cause the kind of injury that affects someone's life forever... Any unsafe floor condition can cause an injury that has a serious affect on someone's life forever". (Ex. B, Walmart's policies and procedures produced in discovery, p. 30).

The actual functioning of the Safety Team is vastly different from what Walmart's policies, procedures and handbooks state should happen. Elizabeth Parker was a longtime Walmart employee and store manager at the time of the October 15, 2020, slip and fall and she stated during her 2023 deposition that the Associates receive computer training and an in person safety tour of the store, but she doesn't mention anything about a safety team, safety team meetings, or safety team leadership. (Ex. D, Parker depo. pp. 50-53). The internal mechanism, the Safety Team, publicly designated by Walmart to prevent slip and falls, was never even mentioned to be in existence at the Helena Walmart. Ms. Bennett's injury could have been prevented if there was a functioning Safety Team that did its mandated job (investigating and determining the causes of slip and fall hazards and eliminating that danger) or if the Walmart home office had put these subjects on their topic lists

to be discussed by store management.[1]

## Standard of Review

Walmart correctly cites the applicable law in its brief as to the Standard of Review. The following principals are also appropriate for consideration: The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor. *Mendez v. Walgreen Company*, 061715 ALNDC, 5:15-cv-01136-HGD (2015) citing Tipton GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in her favor. *Alsip v. Wal-Mart Stores East. LP*, 111615 ALSDC, 14-476-CG-N (2015) citing Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11 Cir. 1999). If reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Gordon v. Wal-Marl Supercenter*, 082809 ALSDC, 08-00527-CG-C (2009) citing *Miranda v. B&B Cash Grocery Store. Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*

---

[1] With thousands of Walmart stores, it is a reasonable inference that if one location experienced spills, many other locations also experienced spills. It is also a reasonable inference that the Walmart home office did not want a local store Safety Team to address issues involving maintenance or inspections (proactive maintenance) because that was its job - it only wanted the local Walmart to clean up spills and repair leaks as they happened (reactive maintenance).

*Liberty Lobby Inc*., 477 U.S. 242, 248 (1986).

**Argument**

I.     PLAINTIFF'S CLAIMS ARE IN PART BASED ON "DEFECTIVE
       CONDITIONS" IN THE SUBJECT WALMART, I.E., A CHIPPED
       PALLET HOLDING CASES OF WATER BOTTLES. AS SUCH, ONCE
       A DEFECT IS PROVEN, THE INVITEE'S CLAIMS ARE DUE TO BE
       SUBMITTED TO THE JURY.

In *Winn-Dixie Montgomery. Inc. v. Weeks*, 504 So. 2d 1210 (Ala. 1987) a two-

year-old child in a wobbly shopping cart reached for candy on a display rack.  The

shopping cart then tilted over and the child's cheek was impaled on a broken wire

sticking up on the candy rack. The jury award based on negligence and wantonness

was affirmed on appeal. In so holding the court stated:

> "Matthew [the child] and his mother were business invitees in the
> Winn-Dixie grocery store. The duty owed them by Winn-Dixie was to
> keep the premises reasonably safe for customers. Questions of whether
> the shopping cart and candy rack were defective, and, if so, whether
> they had been so for such a period of time that Win-Dixie should have
> discovered the defects, were properly left to the jury. *Great Atlantic &
> Pacific Tea Co. v. Popkins*, 260 Ala. 97, 69 So. 2d 274 (1953); *First
> National Bank of Birmingham v. Lowerv*, 263 Ala. 36, 81 So. 2d 284
> (1955); *Hill Grocery Co. v. Hameker*, 18 Ala. App. 84, 89 So. 850
> (1921 ); *Western Railway of Alabama v. Still*, 352 So.2d 1092 (Ala.
> 1977).
>
> "The evidence in this case was susceptible of several inferences. One
> inference that could be drawn by a jury was that the cart provided was
> defective, and that the defect caused it to collapse when a child tried to
> reach candy placed within a child's reach at the check-out counter...

504. So. 2d at 1211. In the instant case, one inference that could be drawn by a jury

was that the chipped pallet holding the cases of water bottles pierced the cases of

water bottles it was holding and that this defect caused the cases of water bottles to leak onto the floor near the pallets.

*Norris v. Wal-Mart Stores. Inc*., 628 So. 2d 475 (Ala. 1983) involved a case where a store customer was injured when a box of toothpaste fell from a shelf causing injuries. There was no evidence as to why the box fell other than that the shelf did not have railings. The lower court granted a directed verdict for Walmart. Relying in part on *Mims*, the Alabama Supreme Court reversed the directed verdict noting that once --a defect in a part of the premises"' has caused injury, the issue of constructive knowledge is for the jury. 628 So.2d at 478.

ln this case, Walmart, in passing, has stated that Ms. Bennett's injuries were caused by the water on the floor and not directly by the defective parts of the store, i.e. the chipped pallet holding the cases of bottled water. This "splitting of the hairs" theory has not been argued herein as a basis for Walmart's motion for summary judgment. If Walmart attempts to present this theory in its reply brief, however, current case law does not require that the invitee be injured directly by contact with the defective item. An invitee must only show that the injury was "caused by a defect or instrumentality ... located on the premises..." *Bates v. United State of America,* 073115 ALSDC, 13-00051-KD-C (U.S. Dist. Ct., Southern Dist. Of Ala. 2015). The law involving defects is not hinged on whether or not the invitee came into physical contact with the defective item; it is grounded on the law that parts of the store (like

a display rack, shopping cart, or chipped pallet) require ordinary and reasonable maintenance in order to provide safe premises for the store customers. *Bates v. United State of America,* 073115 ALSDC, 13-00051-KD-C (U.S. Dist. Ct., Southern Dist. Of Ala. 2015). At the very least, this is a jury issue.

II.    ADDITIONALLY, AND INDEPENDENTLY, PLAINTIFF IS ENTITLED TO RECOVER BECAUSE WALMART FAILED TO PERFORM REASONABLE INSPECTIONS AN/OR MAINTENANCE OF ITS AISLES AND PALLETS TO DISCOVER OR PREVENT THE DANGEROUS CONDITION OF WATER ON THE FLOOR.

*Wal-Mart Stores v. Tuck*, 671 So. 2d 101 (Ala. Civ. App. 1995) involved a case where an invitee tripped over on a piece of shelf fencing that was on the floor. Walmart surmised that another customer must have hit the fencing with a shopping cart causing it to dislodge. Walmart introduced evidence that its employees had conducted a "safety sweep" about an hour before the injury, its employees were trained to remove items on the floors and its employees found nothing on the floor. Additionally, the Walmart assistant manager, who filled out the incident report, did not note in the report any witnesses or question any employees about what happened, the safety sweeps, etc. There was no video footage of the incident because there was no surveillance camera on the aisle where the incident occurred.

In Ms. Bennett's case, while Walmart doesn't argue that it conducted any safety sweeps of its Helena store on the date of Ms. Bennett's fall, they do state that they didn't receive any reports of spills from customers, vendors, or employees and they

did not conduct any investigation as to why or how the spill occurred. This failure

to perform reasonable inspections and/or maintenance of its aisles and pallets is

enough to necessitate this case being presented to a jury.

III.    DUE TO THE "RECURRING INCIDENTS" OF SPILLS (3 OVER 6 MONTHS) CREATES A GENUINE ISSUE OF FACT AS TO WALMART'S KNOWLEDGE OF THE DANGEROUS CONDITIONS POSED BY THESE PREMISES DEFECTS.

In another case against Walmart, (*Ferguson v. Wal-Mart Stores East*, 082411

TNEDC, 2:10- CV-245, U.S. District Court, E.D. TN, 2011) an invitee was injured

when she slipped and fell on a pool of liquid. Walmart sought a summary judgment

contending that there was no evidence as to the "length of time" the substance was

on the floor and therefore it could not have had constructive knowledge of the danger

the liquid posed. In denying Walmart's motion for summary judgment, the federal

judge held:

> "[P]laintiffs may prove that a premises owner had constructive notice of the presence of a dangerous condition by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence. This approach focuses directly on a principle firmly established in our case law- that a premises owner's duty to remedy a condition, not directly caused by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition. It simply recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on a constructive notice of the condition's existence. This places a duty on that owner to take reasonable steps to remedy this commonly dangerous condition. Allowing plaintiffs to prove constructive notice in this manner relieves plaintiffs of the difficult burden of showing the duration of a particular occurrence so

9 of 20

long as plaintiffs can show that the dangerous condition was part of a "pattern of conduct, a recurring incident or a general or continuing condition·', such that its presence was reasonably foreseeable to the premises owner:' (Emphasis added).

The injured customer submitted evidence showing that there had been an incident two and one half months before her fall where another customer fell on water "from a roof leak". Walmart records showed that there were roof repairs made involving the prior referenced incident. The court noted:

> "This evidence, viewed in the light most favorable to Plaintiff, raises at least a genuine issue of fact as to whether Walmart was on notice of the possibility of dangerously slippery floors in Action alley.

> "Based on both the general evidence of the recurring condition of slippery floors during rainstorms, and the specific evidence of a leaky roof over Action alley, the Court finds there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the slippery floor condition prior to Plaintiffs accident."

In the Bennett case, 2 aisle spills causing injuries were documented in the 6 month period before Ms. Bennett's fall - one just a few weeks before. These "recurring incidents" are sufficient to have the constructive notice issue submitted to the jury.

In *Kmart Corp. v. Peek*, (757 so 2d 1138 (Ala. l 999) a store customer was injured when an automatic door closed on him. This was caused by sensors in the doorway being inoperative. A jury awarded the invitee damages based on negligence and wantonness. Kmart appealed contending that the trial court errored in allowing the introduction into evidence of two other incidents involving automatic door

malfunctions because, it is alleged, all of the incidents involved three separate doors.

In affirming the admissibility of the evidence, the Alabama Supreme Court stated:

> "The general rule is that [i]n an action for injury, allegedly caused by the defendant's negligently keeping or maintaining a dangerous place or instrumentality, evidence of notice to the defendant, prior to the accident in suit, of the alleged dangerousness or defectiveness is material or consequential in a negligence action. Charles W. Gamble, McElroy's Alabama Evidence §64.04(1), at 290 (6th ed. 1996) (emphasis added). Consequently, in a negligence action, 'the plaintiff may prove the occurrence of other accidents at such place or with such instrumentality if relevant to show notice or knowledge of such defect or danger.'"

757 So. 2d at 1140.41. The Supreme Court also affirmed the submission of the

wantonness claim to the Jury.

> "However. to establish wantonness, the plaintiff must 'prove that the defendant caused harm by the conscious doing of some act or the conscious omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act injury would likely or probably result.'"

757 So. 2d at 1144. The plaintiff argued that Kmart failed to inspect the automatic

doors as often as reasonably required (daily in that case). The Court held that "Kmart

cannot rely on its own malfeasance to avoid liability for malfeasance." 757 So. 2d at

1144. See also *Moore v. Winn-Dixie Stores*, 406 So. 2d 347 (Ala. 1981), a slip and

fall case where a wantonness claim properly went to the jury because there was

evidence that the defendant had knowledge of a prior fall but it never attempted to

investigate or remedy the defect that caused the injury.

In *McCorvy v. Alabama River Cellulose*, 101014 ALSDC, 13-0118-WS-N (U.S. Dist. Ct., S.D. Ala.) the plaintiff was injured when a piece of wood shot out of the defendant's machinery. There was evidence that there were other instances where wood was shot out but no one had ever been hurt. Defendant argued that its premises were reasonably safe "because there is no evidence that anyone has ever been injured by a log from the Powerfeed 'in the area where plaintiff supposedly fell'". i.e., it denied constructive notice. In denying defendant's motion for summary judgment, the court stated:

> "Most curious is the defendant's argument that these incidents could not impart the required notice because no drivers were hurt in these incidents. The question, again, is whether the defendant was on notice that wood expelled from the Powerfeed risked injury

> to drivers in the area, and wood that flies far enough, and with enough force, to damage log trucks is wood that flies far enough, and with enough force, to injure any driver in that area, regardless of whether a driver has been unfortunate enough to be struck. The defendant identifies no authority for its proposed "one free injury" rule, which the Court rejects."

In *Kirksev v. Schinder Elevator Corp.*, 060716 ALSDC 15-0115-WS-N (U.S. Dist. Ct., S.D. AL 2016), a child was injured when he fell from an escalator at Sears. The court held that a reasonable fact finder could consider three other escalator falls at Sears Stores (2005 incident in Hawaii; 2008 incident in California; and 2013 incident in Chicago) to show that Sears had notice of the danger that existed by the defective part of its premises.

In Ms. Bennett's case, a reasonable fact finder could consider the two other slip and falls in areas where liquid items are sold to show that Walmart had notice of the danger that existed on its premises.

IV.    WALMART'S ASSERTION THAT IT FOLLOWED ITS SAFETY PROCEDURES DOES NOT INSULATE IT FROM LIABILITY AS BENNETT IS NOT REQUIRED TO SHOW THAT THE SPILL CAUSING THE SLIP AND FALL SPILLED ON A PRIOR OCCASION IF THERE IS EVIDENCE OF OTHER SPILLS ON THE PREMISES.

In *Fetzer v. Wal-Mart Stores,* 030116 ILNDC, 13 C 9312 (U.S. Dist Ct., N.D. IL 2016), a Walmart customer fell in water caused by drips from the ceiling. Similar to the instant case, Walmart defended by offering evidence that it had not received complaints of water in the area of the slip and fall prior to the fall and that it had conducted safety sweeps. In opposition, the customer presented evidence that there had been roof leaks in "unspecified areas of the store", a variety of roof repairs were requested and completed and the store manager ' was aware of 'multiple leaks' located throughout the store" and "that on unspecified dates, the roof leaked unpredictably in different places; it did not leak consistently from the same locations'". Walmart sought a summary judgment regarding the plaintiffs negligence and wantonness claims. Citing law almost identical to Alabama law, the federal court held:

"Walmart is responsible for the condition of the roof at the Crystal

> Lake store, and its safety programs do not insulate it from potential liability based on an alleged failure to maintain its roof properly... A jury will have to determine what weight to give evidence relating to other leaks…"

In Ms. Bennett's case, although Walmart does not argue that its employees conducted periodic safety sweeps of the water aisle as their own policies and procedures required on the date in question, they do argue that no one had reported a spill before Ms. Bennett's fall. Because Walmart is responsible for the condition of its premises, including its pallets and floors, all alleged failures to properly maintain these premises should be submitted to a jury.

V.   WALMART CREATED THE HAZARDOUS CONDITION

Wal-Mart's employees created the dangerous condition which caused Ms. Bennett to fall and injure her ankle, resulting in an extensive surgery. Where, "'the defendant or his employees have affirmatively created the dangerous condition, [the] plaintiff need not introduce evidence that [the] defendant had actual or constructive knowledge of the hazard. Under such circumstances, the courts presume notice.'" *Wal-Mart Stores, Inc. v. Rolin*, 813 So. 2d 861, 864 (Ala. 2001) (quoting *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 2d 232,234 (Ala.1993). Wal-Mart argues that Ms. Bennett's claims fail as a matter of law. This case falls directly in-line with *Rolin*, 813 So. 2d at 861 and McClinton, 631 So. 2d at 232, such that Ms. Bennett is not required to establish on summary judgment, or at trial, that Wal-Mart and its

employees had actual or constructive knowledge of the dangerous condition of the chipped wooden pallets holding containers of bottled water that were leaking. In *Rolin*, the Supreme Court of Alabama held that a customer who tripped over a barbecue grill that was protruding from a box was not required to establish Wal-Mart's actual or constructive knowledge of the hazardous condition because "there [was] evidence to indicate that the hazardous condition was created by employees of the premises owner." 813 So. 2d at 865. The court cited *Wal-Mart Stores. Inc. v. McClinton*, supra, in support of its holding.

In *McClinton*, there was also evidence to indicate that Wal-Mart's employees created a hazardous condition -- a gun cabinet that was protruding into the store aisle. The Supreme Court of Alabama held that "Wal-Mart created the dangerous condition by allowing the gun cabinet, with its extended molding, to protrude into the aisle. Thus, notice of the hazardous condition [was] imputed to Wal-Mart." *McClinton*, 631 So. 2d at 234. Similarly, in *Denmark v.* Mercantile Stores Co., 844 So. 2d 1189, 1194 (Ala. 2002), there was evidence indicating that the premises owner's employees had left a large roll of plastic shopping bags in a place where customers were likely to trip on it.

Based on the foregoing facts, and case law, it is for a jury to decide the issues as to whether Wal-Mart created the hazard which caused Ms. Bennett to fall, and whether Wal-Mart should be held accountable.

VI.    THE WATER SPILLS WERE NOT OPEN AND OBVIOUS

Wal-Mart argues that it is entitled to judgment as a matter of law because the liquid droplets were open and obvious to Ms. Bennet. Wal-Mart attempts to pull the proverbial wool over this Court's eyes by arguing that "if there were drips of black water on the white tile, Wal-Mart owed the plaintiff no duty to eliminate the potential hazard or to warn her of the potential hazard."

Wal-Mart's argument that the condition that caused Ms. Bennett's fall was open and obvious is an affirmative defense, on which Wal-Mart bears the ultimate burden of proof. *Denmark v. Mercantile Stores Co., Inc.*, 844 So. 2d 1189, 1194 (Ala. 2002). "Only 'when there is no genuine issue of material fact as to any element of an affirmative defense, ... and it is shown that the defendant is entitled to a judgment as a matter of law' is a summary judgment proper." *Id.* (quoting *Wal-Mart Stores, Inc. v. Smitherman*, 743 So. 2d 442,445 (Ala. 1999)). The Alabama Supreme Court has observed that "questions of openness and obviousness of a defect or danger and of an [invitee's] knowledge are generally not to be resolved on a motion for summary judgment." *Harding v. Pierce Hardy Real Estate*, 628 So. 2d 461, 463 (Ala. 1993). Additionally, the Supreme Court of Alabama has "indicated that even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect." *Young v. La*

*Quinta Inns. Inc.*, 682 So. 2d 402, 404 (Ala. 1996) (citing *Furgerson v. Dresser*

*Industries, Inc.,* 438 So. 2d 928

   Wal-Mart has failed to carry its burden as a matter of law. Ms. Bennett testified

that she couldn't tell the difference between the dirty water and the dark scuff marks

on the floor. Thus, it is not evident that she knew, or should have known, or that she

appreciated, the danger caused by the water on the floor.

   VII.   THERE IS A GENUINE ISSUE OF FACT AS TO WHETHER
          WALMART'S CONDUCT WAS WANTON, I.E., IF IT
          CONSCIOUSLY ACTED, OR FAILED TO ACT, WITH RECKLESS
          OR CONSCIOUS DISREGARD OF THE SAFETY OF ITS INVITEES
          AND WALMART WAS AWARE THAT HARM WOULD LIKELY
          OR PROBABLY RESULT.

   There is substantial evidence that Walmart acted with reckless or conscious

disregard of its customers' safety. Walmart knew that the subject Helena store had

unpredictable spills in different locations where liquid items were sold twice within

6 months of the subject slip and fall; it never tried to find the "root cause of the spill;

Walmart knew that periodic safety sweeps should be conducted throughout the day,

but it did not due so; it violated its own policy by not having a  Safety team; it used

chipped pallets with jagged edges to hold cases of plastic bottled water,  despite

knowing of the history of unpredictable leaks and/or spills in areas housing liquid

items; Walmart's home office never allowed or suggested that a local Safety Team

(whose mission it was to prevent slips and falls and remedy conditions that create

risks of slips and falls) to even discuss why the Helena store kept having these unpredictable spills; and instead of honoring the store manager's request for more video surveillance to cover all aisles of the store, Walmart's asset protection manager inexplicable denied the store manager's request which could have explained the root cause of all these inexplicable leaks. All of these facts, and the reasonable inferences to be drawn therefrom, are sufficient for a jury to conclude that Walmart acted recklessly or in conscious disregard of the safety of its customers. The evidence supports the inference that Walmart did the above to save money (stopped the purchase of additional video surveillance cameras).

The last element, awareness that harm will likely or probably result, is easy. Walmart's internal policies, procedures and handbooks involving safety consistently stress the dangers posed by water on the floor. It is undisputed that Walmart knew that the Helena store had a history of spills in areas housing liquid items and it knew that these spills and/or leaks posed a significant risk of a slip and fall injury. Despite this, it never tried to find out why there were spills and leaks in these areas before they caused an injury. Instead, in order to save money by not purchasing more video surveillance cameras to better investigate the root causes of these spills and leaks, Walmart chose to simply clean the spills after they happened. It ignored its own policy and industry standards of regular inspections.

The facts in the Bennett case are more egregious than many of those in the above cited cases. Ms. Bennett was the victim of a calculated risk taken by Walmart, at the safety of its invitees, to save money. This is a case about safety versus greed, and Alexandria Bennett deserves to have a jury hear about Walmart's wrongdoings.

## CONCLUSION

Where there are defects in the premises (leaking roof, wobbly shopping carts, chipped pallets housing containers of liquid items, etc.) or a failure to inspect a part of the premises (inspect the condition of the pallets at least annually and every time reactive work is done); or a failure to follow policies (Walmart's failure to inspect the condition of its pallets, conduct safety sweeps, assemble a safety team, maintain sufficient video surveillance of its stores, and fully investigate the root cause of all slip and fall incidents); or recurring incidents spills and slip and falls (3 over 6 months); or that Walmart failed to reasonably maintain its pallets that hold liquid items. The issue of Walmart's knowledge of the defect or dangerous condition is required to be submitted to the jury. Walmart's allegation that it followed all safety procedures is for the jury to consider - it is not sufficient to warrant a summary judgment.

Respectfully submitted,

/s/ Ellise M. Washington

                                    Ellise M. Washington (ASB-1744-G16U)
                                    *Counsel for the Plaintiff, Alexandria Bennett*

OF COUNSEL:
EMW LAW, LLC
2100 1st Ave. N., Suite 300
Birmingham, AL 35203
ellise@emwlawllc.com
P: 205-938-4369
F: 205-449-2171

## **CERTIFICATE OF SERVICE**

I hereby certify that I have caused a copy of the foregoing document to be

electronically filed and issued to counsel via electronic mail and/or CM/ECF

notification on this date: September 29, 2023.


Gwendolyn A. Gordon
Christopher J. Zulanas
***Counsel for Defendant Wal-Mart Stores East LP***
Friedman, Dazzio & Zulanas, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
czulanas@friedman-lawyers.com
ggordon@friedman-lawyers.com

                                    /s/ Ellise M. Washington
                                    OF COUNSEL