FILED
2024 Mar-19  AM 09:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALEXANDRIA BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:22-cv-1306-AMM** |
| | ) | |
| **WALMART, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This case is before the court on a motion for summary judgment filed by Defendant Walmart, Inc. ("Walmart"). Doc. 15. For the reasons explained below, the motion for summary judgment is **GRANTED**. The second motion for an extension of time filed by Plaintiff Alexandria Bennett, Doc. 28, is **GRANTED**. Walmart's motion to strike Ms. Bennett's response to its motion for summary judgment, Doc. 32, is **DENIED**.

## I.    BACKGROUND

Facts set forth in the parties' statement of undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or

reply of the opposing party.[1] Doc. 3 at 19–20. These are the undisputed material facts, taken as true, and construed in the light most favorable to Ms. Bennett:

On the evening of October 15, 2020, Ms. Bennett went into the Walmart store in Helena, Alabama. Doc. 16-2 at 20, Depo. 74:1–11. Ms. Bennett went to the aisle that sold bottled water ("the water aisle"). *Id.* at 22, Depo. 81:8–14. Ms. Bennett "reach[ed] to get some water, and [she] slipped and fell." *Id.*, Depo. 83:19–20. Ms. Bennett slipped and fell because of the "dirty water on the floor," *id.* at 24, Depo. 91:18–19, which Ms. Bennett described as "drips," *id.* at 26, Depo. 98:23. Specifically, the dirty water was "in front of the pallet on the floor." *Id.* at 34, Depo. 130:1–2. There were water bottles "stacked up on . . . a raggedy looking pallet." *Id.* at 25, Depo. 96:23–97:1. But Ms. Bennett testified that she did not know where the "dirty water" had come from. *Id.* at 27, Depo. 101:18–22.

At the time that Ms. Bennett fell, there were no "warning signs or cones on the water aisle." *Id.* at 32, Depo. 121:18–21. Ms. Bennett did not see "any water or any liquid substance on the floor of the water aisle before [she] fell." *Id.* at 24, Depo.

---

[1] The court's initial order further provides that "[a]ll statements of fact, in all sections of the brief, must be supported by specific reference to the CM/ECF document and page number of the evidentiary submission." Doc. 3 at 18. The court warned the parties: "Compliance with this requirement will necessitate filing the evidentiary submission in support of the brief separately from the brief and may necessitate filing the evidentiary submission one or more days prior to filing the brief." *Id.* (cleaned up). Ms. Bennett did not file a compliant brief. Specifically, she did not cite to the CM/ECF document and page number for her, or Walmart's, evidentiary submission. Accordingly, the court was required to search the evidentiary submissions to attempt to find the referenced evidence in Ms. Bennett's brief.

92:7–10. Before Ms. Bennett's fall, no vendor or Walmart employee or customer who had been down the water aisle that day reported the presence of any water or liquid on the floor. Doc. 16-3 at 17, Depo. 59:8–61:8. Ms. Bennett testified that she "[doesn't] think [Walmart employees] knew" that "there was water on the floor of the water aisle before [she] fell." Doc. 16-2 at 27, Depo. 102:20–103:2. Ms. Bennett also testified that she had no idea "how long the water had been there before [she] fell." *Id*., Depo. 102:3–5.

There is "no video surveillance footage of Ms. Bennett's fall from Walmart's surveillance camera." Doc. 16-3 at 10, Depo. 31:23–25. The store manager, Elizabeth Parker, has "asked [her] market asset protection manager if [the store] could possibly get more video." *Id*., Depo. 30:3–4. Ms. Parker was told that the store "couldn't add any more," but was not given a reason as to why. *Id*., Depo. 30:9–12.

After Ms. Bennett fell, an ambulance arrived, and Ms. Bennett was taken to the hospital. Doc. 16-2 at 30, Depo. 113:7–15. Ms. Bennett experienced pain in her hip and ankle from the fall. *Id*. at 31, Depo. 117:3–4. In July 2021, Ms. Bennett had surgery for her ankle. *Id*. at 36, Depo. 137:15–21.

In response to an interrogatory about prior slip and fall incidents in the past five years, Walmart answered:

> [D]uring the three years preceding the subject incident, the only incidents which occurred at the subject store and in a remotely similar manner as that alleged by [Ms. Bennett] were the following: in April of 2020, a customer reported slipping in a puddle of water in the checkout

area; in September of 2020, a customer reported slipping on a pink
substance in the dairy section.

Doc. 34-3 at 7. Ms. Parker testified that she is not aware of any "structural issues"
or "leaking lights or ceiling" or "leaking refrigerators" in the store. Doc. 16-3 at 16,
Depo. 56:8–15. Walmart's workplace safety training instructs employees to monitor
for potential hazards and address them without delay. *See* Doc. 27-1 at 56
(SEALED).

When there is a customer incident, Walmart policy requires employees to care
for the customer, secure the area of the incident, notify a member of management,
investigate, make a report, and submit evidence. Doc. 16-3 at 13, Depo. 43:20–44:9;
*id*. at 14, Depo. 49:6–22; Doc. 27-1 at 3–4 (SEALED). A "Customer Incident
Report" was filled out after Ms. Bennett's fall, which stated: "Reaching for water on
shelf slipped and fell on floor pain in right hip and ankle." Doc. 16-6 at 2. Ms. Parker
testified that she was not aware of "any investigations that . . . tr[ied] to uncover the
source of the water that was on the floor when Ms. Bennett fell." Doc. 16-3 at 16,
Depo. 57:14–18.

Ms. Bennett filed this action on October 12, 2022. Doc. 1. In her complaint,
Ms. Bennett brings a claim for negligence (Count 1) and for wantonness and
recklessness (Count 2). *Id*. Walmart moved for summary judgment on all Ms.
Bennett's claims. Doc. 15. The motion is fully briefed. Docs. 17, 29, 36.

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up).

In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-movant." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023). "Nonetheless, unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Id*. (cleaned up). "Further, a mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Gogel v. Kia Motors Mfg. of Ga., Inc.,* 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (cleaned up). Summary judgment must be granted if the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Rink v. Cheminova, Inc*., 400 F.3d 1286, 1294 (11th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## III.   ANALYSIS

### A.   Ms. Bennett's Negligence Claim

To establish a negligence claim under Alabama law, "the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (cleaned up). A store has a duty "to exercise reasonable care to provide and maintain reasonably safe premises for the use of its customers." *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1192 (Ala. 2002) (quoting *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990)). But "[t]he owner of a premises . . . is not an insurer of the safety of his invitees . . . and the principle of res ipsa loquitur is not applicable." *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000) (cleaned up). "There is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Id.* (cleaned up).

When a plaintiff alleges injuries from slipping and falling because of a substance on the floor, "[a]ctual or constructive notice of the presence of the substance must be proven before [the defendant] can be held responsible for the injury." *Maddox*, 565 So. 2d at 16. A plaintiff "must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the defendant]; or (2) that [the defendant] had actual notice that the substance was on the floor; or (3) that [the defendant] was delinquent in not discovering and removing the substance." *Id.* But "[w]hen the defendant or his employees have affirmatively created the dangerous condition, plaintiff need not

6

introduce evidence that defendant had actual or constructive knowledge of the hazard." *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 465 (Ala. 1992) (cleaned up). For instance, when there is "evidence from which a jury could reasonably infer that [the defendant's] employee spilled water on the floor . . . the defendant is presumed to have notice of the hazard." *Id.*

Walmart argues that notice may not be presumed because "there is no evidence of any specific act by Wal-Mart that could be tied to the creation [of] drips of water on the subject aisle." Doc. 17 at 20. Walmart further argues that there is no evidence of actual or constructive notice. *Id.* at 21–26. Specifically, Walmart argues that "the evidence demonstrates that no one knows how long any alleged drips of liquid were on the floor prior to the plaintiff's fall." *Id.* at 25. Walmart also asserts that Ms. Bennett "has not presented any evidence to indicate that [its] inspection or cleaning procedures were inadequate or that they were performed inadequately on the day of [her] fall." *Id.* at 17.

Ms. Bennett responds that her "claims are in part based on 'defective conditions' in the subject Walmart." Doc. 29 at 6 (cleaned up). Specifically, she asserts that "one inference that could be drawn by a jury [is] that the chipped pallet holding the cases of water bottles pierced the cases of water bottles it was holding and that this defect caused the cases of water bottles to leak onto the floor near the pallets." *Id.* at 6–7. Ms. Bennett argues that "once . . . a defect in a part of the

premises has caused injury, the issue of constructive knowledge is for the jury." *Id.* at 7 (cleaned up).

In making this argument, Ms. Bennett relies on *Norris v. Wal-Mart Stores, Inc.*, where the Alabama Supreme Court acknowledged that "once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury." 628 So. 2d 475, 478 (Ala. 1993) (quoting *Mims v. Jack's Rest.*, 565 So. 2d 609, 610 (Ala. 1990)). But Ms. Bennett's reliance on *Norris*—and by extension, *Mims*—is misplaced. "[T]he sufficiency of evidence to require jury submission in diversity cases is a question of federal law." *Goggan v. Target Corp.*, No. 21-10971, 2021 WL 5298900, at *3 (11th Cir. Nov. 15, 2021) (quoting *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969)). Addressing *Mims*, the Eleventh Circuit held in *Goggan* that "[s]tate-court decisions on issues of evidentiary sufficiency for trial aren't binding in the Rule 56/summary judgment sense, even if they ordinarily will guide the analysis of federal courts when determining whether the facts before them present a genuine issue for trial." *Id.* (cleaned up). Federal summary judgment standards require the plaintiff to "show that a jury could reasonably infer . . . notice should the case proceed to trial." *Id.*

Ms. Bennett has not developed evidence that would allow the jury to reasonably infer notice. Notice is not presumed, because Ms. Bennett cites no evidence that Walmart "affirmatively created" the hazard that caused her fall. *Dunklin*, 595 So. 2d at 465 (cleaned up). Although Ms. Bennett cites cases where notice was presumed, she does not explain how the record in this case supports presumed notice. *See* Doc. 29 at 14–15. To the extent that Ms. Bennett is relying on her theory of a chipped pallet to assert that Walmart created a dangerous condition, Walmart asserts that Ms. Bennett "cites no evidence showing the pallet was chipped or, even if it was chipped, that the wooden pallet could pierce a plastic water bottle." Doc. 36 at 8. Walmart further asserts that Ms. Bennett "cites no evidence establishing when or how the pallet became chipped or who placed the pallet on the water aisle." *Id*.

The court agrees. Ms. Bennett testified that she did not know where the "dirty water" on the floor had come from. Doc. 16-2 at 27, Depo. 101:18–22. Regarding the pallet that held the water bottles, Ms. Bennett testified only that "the water was stacked up on, like, a raggedy looking pallet." *Id*. at 25, Depo. 96:23–97:1. She did not testify that the pallet was chipped or that the water bottles had been pierced by the chipped pallet. *See id*. Photographs of the site where Ms. Bennett fell show a wooden pallet that is chipped along the edges, but no part of that edge has either pierced or appears capable of piercing a plastic water bottle. *See* Doc. 16-5 at 2, 7.

No reasonable jury could find from the record that Ms. Bennett's injuries were caused by a chipped pallet or that Walmart affirmatively created a hazard through a chipped pallet.

Without the presumption of notice, Ms. Bennett must produce sufficient evidence for a reasonable jury to find: (1) that the water she slipped on "had been on the floor a sufficient length of time to impute constructive notice" to Walmart; (2) that Walmart had "actual notice" of the water on the floor; or (3) that Walmart was "delinquent in not discovering and removing" the water. *Dunklin*, 595 So. 2d at 464 (cleaned up).

Ms. Bennett does not argue that Walmart had actual notice. *See* Doc. 29 at 6–17. Nor does she argue that the water had been on the floor a sufficient length of time to impute constructive notice. *See id*. Instead, Ms. Bennett asserts that "while Walmart doesn't argue that it conducted any safety sweeps of its Helena store on the date of [her] fall, they do state that they didn't receive any reports of spills from customers, vendors, or employees and they did not conduct any investigation as to why or how the spill occurred." *Id*. at 8–9. Without further explanation, Ms. Bennett concludes: "This failure to perform reasonable inspections and/or maintenance of its aisles and pallets is enough to necessitate this case being presented to a jury." *Id*. at 9.

The court already has rejected Ms. Bennett's theory that her injuries were caused by a chipped pallet. Whether Walmart performed reasonable inspections of the aisles is a question whether Walmart was "delinquent in not discovering and removing" the water. *Dunklin*, 595 So. 2d at 464 (cleaned up). But Ms. Bennett has not developed evidence that could allow a reasonable jury to find such delinquency. Ms. Bennett does not cite any evidence that Walmart failed to conduct safety sweeps on the day of her fall. *See* Doc. 29 at 8–9. The evidence that no vendor, employee, or customer reported the presence of water on the floor on the day that Ms. Bennett fell is consistent with this evidentiary deficit. *See* Doc. 16-3 at 17, Depo. 59:8–61:8. And whether Walmart conducted any investigation after Ms. Bennett fell is irrelevant to whether it was delinquent in not removing the water before she fell.

In the alternative, Ms. Bennett argues that "a reasonable fact finder could consider the two other slip and falls in areas where liquid items are sold to show that Walmart had notice of the danger that existed on its premises." Doc. 29 at 13. That is, Ms. Bennett asserts that Walmart had constructive notice of the presence of water on the floor of the water aisle on October 15, 2020, based on the presence of slippery substances in April and September of 2020 in different parts of the store. This argument fails.

The case law that Ms. Bennett relies on is inapposite. First, *Ferguson v. Wal-Mart Stores East, L.P.*, No. 2:10-CV-245, 2011 WL 3739157, at *3 (E.D. Tenn.

11

Aug. 24, 2011) did not apply Alabama law, which applies to this case. The remaining cases that did apply Alabama law involved defects that are a part of the premises, not merely the presence of a slippery substance on the floor. *See Kmart Corp. v. Peak*, 757 So. 2d 1138, 1140 (Ala. 1999) (plaintiff injured by a "set of automatic doors" that closed on him); *Mitchell v. Moore*, 406 So. 2d 347, 349 (Ala. 1981) (plaintiff injured by tripping and falling "at a jagged crack between the ramp and sidewalk" outside the store); *McCorvey v. Ala. River Cellulose, LLC*, No. 13-0118-WS-N, 2014 WL 5092952, at *1 (S.D. Ala. Oct. 10, 2014) (plaintiff injured by "a piece of wood that had shot out of the defendant's machinery"); *Kirksey v. Schindler Elevator Corp.*, No. 15-0115-WS-N, 2016 WL 3189242, at *1 (S.D. Ala. June 7, 2016) (plaintiff's son killed when he "fell . . . from the moving handrail of an escalator"). Under Alabama law, "cases involving a slippery substance of unknown origin" are distinct from "cases where the alleged defect is a part of the premises." *Wal-Mart Stores, Inc. v. McClinton*, 631 So. 2d 232, 234–35 (Ala. 1993) (cleaned up).

Ms. Bennett does not cite, and the court has not found, any case where Alabama law found constructive notice based on prior incidents involving a slippery substance on the floor. To the extent that Ms. Bennett is relying on her theory of a "chipped pallet" to assert a defect in the premises, the court has already rejected the argument.

Because there is no evidence from which a reasonable jury could find constructive notice, summary judgment is **GRANTED** in favor of Walmart on Ms. Bennett's negligence claim.

### B.   Ms. Bennett's Wantonness Claim

Walmart also argues that it is entitled to summary judgment on Ms. Bennett's wantonness claim. "Wantonness is not merely a higher degree of culpability than negligence." *Tutor v. Sines*, No. 1210037, 2023 WL 2054060, at *2 (Ala. Feb. 17, 2023) (cleaned up). "Wantonness is '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.'" *Id.* (quoting Ala. Code § 6-11-20(b)(3)). Wantonness "requires the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Id.* (cleaned up).

Ms. Bennett has failed to develop evidence of wantonness. Ms. Bennett argues, without citation to the record, that despite the knowledge of two prior slip-and-fall incidents in 2020, Walmart "never tried to find the []root cause of the spill." Doc. 29 at 17. But the record indicates that Walmart had procedures in place for "what to do in the event of a customer incident." Doc. 16-3 at 13, Depo. 43:11–12; *see also* Doc. 27-1 at 3–4 (SEALED). Ms. Bennett does not cite any evidence that Walmart did not follow these procedures after the spills that occurred in April and

September of 2020. Doc. 29 at 17–19. Ms. Parker testified only that she was not aware of any investigations that "tr[ied] to uncover the source of the water that was on the floor when Ms. Bennett fell." Doc. 16-3 at 16, Depo. 57:14–18.

Further, Ms. Bennett's assertion that "in order to save money by not purchasing more video surveillance cameras to better investigate the root causes of these spills and leaks, Walmart chose to simply clean the spills after they happened," is pure speculation, not evidence. Doc. 29 at 18. Ms. Parker testified that she "asked [her] market asset protection manager if [the store] could possibly get more video," and she did not testify that she did so based on concern about slip-and-fall incidents. Doc. 16-3 at 10, Depo. 30:1–4. Nor did she suggest in her testimony that Walmart refused to purchase more surveillance cameras in order to save money. *See id.*, Depo. 30:8–12.

Ms. Bennett also cites no evidence for her assertion that a reasonable jury could find reckless or conscious disregard for the safety of customers based on Walmart's alleged failure to conduct periodic safety sweeps and have a Safety Team on site. Doc. 29 at 17. At most, Ms. Bennett's "Narrative of Undisputed Facts" states that Ms. Parker did not "mention anything about a safety team, safety team meetings, or safety team leadership" during her deposition. *Id.* at 4. But the fact that Ms. Parker did not mention a safety team during her deposition is not evidence that it did not exist, especially when she was not specifically asked whether a safety team existed

14

at the store. *See* Doc. 16-3 at 15, Depo. 50:1–53:21 (Ms. Parker testifying about "the safety training that all associates receive").

Because the record contains no evidence that demonstrates a reckless or conscious disregard for the rights or safety of others, summary judgment is **GRANTED** in favor of Walmart on Ms. Bennett's wantonness claim.

## IV.   CONCLUSION

For the reasons explained, summary judgment is **GRANTED** in favor of Walmart on all Ms. Bennett's claims.

**DONE** and **ORDERED** this 19th day of March, 2024.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE